JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| In re:<br><br>THE DISCIPLINARY PROCEEDING OF MICHAEL A. YOUNGE<br><br>MICHAEL A. YOUNGE,<br><br>Appellant,<br><br>vs.<br><br>UNITED STATES TRUSTEE, REGION 16,<br><br>Appellee. | CASE NO. 2:19-cv-06073-AB<br><br>DISCIPLINARY PROCEEDING NO. 2:18-mp-00106-BR<br><br>**ORDER AFFIRMING IN PART AND REVERSING IN PART BANKRUPTCY DISCIPLINARY PANEL'S ORDER AND MEMORANDUM OF DECISION** |

**I.   INTRODUCTION**

Before the Court is attorney Michael A. Younge's ("Appellant" or "Younge") appeal from the bankruptcy disciplinary panel's ("Panel") June 27, 2019 Order Imposing Five Year Minimum Suspension of Michael A. Younge and accompanying Memorandum of Decision ("BK Order," ER[1] 125–26; "BK Mem.," ER 102–07).

---

[1] "ER" refers to Younge's Excerpts of Record. (Dkt. Nos. 20-1 (Bates Nos. 1–135),

1.

Younge filed his opening brief on February 13, 2020, ("AA Br.," Dkt. No. 19), followed by Peter C. Anderson, U.S. Trustee, ("Appellee" or "U.S. Trustee") on April 28, 2020, ("AE Br.," Dkt. No. 27). Younge did not file a reply. Having reviewed the parties' briefing and the record before the bankruptcy court, the Court **AFFIRMS in part** and **REVERSES in part** the Panel's June 27, 2019 order and accompanying memorandum of decision.

## II. BACKGROUND[2]

### A. Younge's Law Practice.

Younge has been member of the State Bar of California since 1994. *See* State Bar of Cal., Att'y Licensee Profile, Michael Anthony Younge (No. 170929), http://members.calbar.ca.gov/fal/Licensee/Detail/170929 (last visited Aug. 28, 2020)[3]. Younge has employed his wife Amany Simmonds ("Simmonds") as his legal assistant since April 2015. (Tr. of Disciplinary Panel's Proceedings ("Panel Tr."), ER 169:10–12). Prior to her employment with Younge, Simmonds did not have experience performing substantive legal work. (*See id.* at 169:13–170:9).

Initially, Simmonds's duties included taking notes at client meetings, assisting with investigations, following up with clients, filling out forms, and serving papers. (*See id.* at 161:4–8, 170:14–25). These days, Simmonds no longer has contact with clients and her duties are limited to making copies and mailing documents. (*See id.* at 160:6–9, 161:4–12).

### B. Younge's Representation of Simmonds.

Younge represented Simmonds in four bankruptcy cases between 2011 and

---

20-2 (Bates Nos. 136–248)).

[2] The background of this case is much more extensive. For purposes of this appeal, the Court only includes the relevant facts and procedural history.

[3] On its own motion, the Court takes judicial notice of Younge's State Bar profile. *See Johnson v. Alhambra & O Assocs.*, No. 2:19-cv-00103-JAM-DB, 2019 WL 2577306, at *1–2 (E.D. Cal. June 24, 2019) (taking judicial notice of plaintiff's State Bar profile).

2.

2012 and in a fifth case in 2015 that was ongoing at the time of Younge's alleged misconduct. (*See* BK Findings,[4] ER 18). Only one of those cases resulted in a standard discharge under Chapter 7 in 2012. (*Id.*). The rest of the cases were dismissed for various reasons; for instance, Simmonds's fifth case under Chapter 13 was dismissed on August 13, 2018 due to her failure to make plan payments.[5] (*Id.*).

### C. Younge's Representation of Singh.

Younge's first client as an attorney was Surat Singh ("Singh"). (Panel Tr., ER 173:4–10). Since 1994, Younge has represented Singh in 10 to 12 different legal transactions. (*Id.*).

On or about May 27, 2004, Singh secured a loan to purchase the property at 527 Westminster Avenue, Newport Beach, California (the "Property"). (SER[6] 465). Bayview Loan Servicing, LLC ("Bayview") was the servicing agent for the loan. (BK Findings, ER 19). On July 20, 2017, Younge filed for Chapter 7 bankruptcy on Singh's behalf in the Central District of California. (*See id.*; SER 21). On August 8, 2017, Younge filed a related adversary proceeding raising several causes of action, including fraud, wrongful disclosure, cancellation of foreclosure instruments, unjust enrichment, and quiet title. (*See* SER 22, 621). The bankruptcy court dismissed Singh's adversary proceeding without leave to amend on November 9, 2017. (*See id.* at 612–14).

On June 7, 2018, the bankruptcy court dismissed Singh's Chapter 7 case with a

---

[4] "BK Findings" refers to the Hon. Catherine E. Bauer's Findings of Fact and Conclusions of Law in Support of the Order to Show Cause Referring Attorney Michael A. Younge (SBN 170929) to the Disciplinary Panel for Bankruptcy Courts of the Central District of California issued on December 4, 2018. (ER 17–25).
[5] The U.S. Trustee requests the Court take judicial notice of unspecified court documents regarding Simmonds's fifth bankruptcy case. (*See* AE Br. 9 n.5). The request is denied due to its lack of specificity and the fact that the parties' excerpts of record are sufficient for the Court to resolve this appeal.
[6] "SER" refers to the U.S. Trustee's Supplemental Excerpts of Record. (Dkt. No. 28 (Bates Nos. 1–699)).

3.

bar on re-filing for bankruptcy for 180 days. (*See id.* at 34, 641–42). On June 25, 2018, the bankruptcy court granted Bayview's motion for relief from the automatic stay that had been preventing the foreclosure of the Property. (*See id.* at 35, 116–18). Bayview promptly scheduled a foreclosure sale for July 23, 2018. (*Id.* at 454–55).

On July 6, 2018, Younge, on Singh's behalf, filed an application for a temporary restraining order ("TRO") in California state court. (BK Findings, ER 20; SER 454). Younge asked the court to enjoin the July 23, 2018 sale of the Property. (SER 454–55). On July 9, 2018, the court denied Singh's application. (BK Findings, ER 20; SER 473). On July 18, 2018, Younge filed a second TRO application on Singh's behalf in state court, once again seeking to enjoin the foreclosure sale. (BK Findings, ER 20). On July 19, 2018, the court denied Singh's second TRO application, noting that it was essentially a motion for reconsideration of the first TRO decision. (*Id.*; SER 505).

### D. Singh's Transfer of the Property to Simmonds.

On July 20, 2018, Singh executed a quitclaim deed, gifting the Property to Simmonds. (*See* SER 125). At the time of the transfer, Singh owed approximately $1.7 million on the Property, which was only worth $1.2 million. (ER 59). The transfer was performed without consideration and without the knowledge of the bankruptcy court or Bayview. (*See* Statement of Cause, ER 4). Due to the automatic stay in place in her ongoing bankruptcy case, Singh's transfer prevented Bayview's foreclosure sale of the Property. (*See* BK Findings, ER 20).

According to Younge, Simmonds did not receive any material benefit from the transfer. (ER 59). Younge also attested that he did not advise, counsel, or encourage Singh to transfer the Property and that the transfer was performed without his knowledge. (*Id.* at 58). Younge testified that he only found out about the transfer when he called Singh a few days after the foreclosure sale was supposed to happen. (Panel Tr., ER 197:10–198:17). Younge confronted Simmonds about the transfer after the call. (*See id.* at 198:16–24).

4.

On August 9, 2018, Bayview filed a motion for relief from the automatic stay on the Property. (BK Findings, ER 19). Younge filed Simmonds's opposition to Bayview's motion (the "Opposition") on August 19, 2018. (*Id.* at 22; SER 355). Younge argued the same points he had raised on behalf of Singh in his two TRO applications and in the adversary proceeding complaint filed in bankruptcy court. (*See* BK Findings, ER 22; SER 355–60).

On August 21, 2018, the bankruptcy court issued an Order to Show Cause ("OSC"), ordering Simmonds to appear on August 29, 2018 and explain the basis for the Property's transfer. (SER 430). On August 22, 2018, the bankruptcy court granted Bayview relief from the automatic stay. (*Id.* at 17).

On August 28, 2018, Younge filed a declaration on Simmonds's behalf (the "Declaration") in connection with the OSC. (*Id.* at 158). In her Declaration, Simmonds attested that she had known Singh for approximately three years. (*Id.* at 159). Simmonds was aware of Singh's legal battles with various banks and agreed to the transfer "for the sole purpose of assisting . . . Singh who is of ill health." (*Id.* at 158–59). Simmonds sought to help Singh manage his Property and join in his litigation as a co-plaintiff. (*Id.* at 159). If the Property had sold on July 23, 2018 as scheduled, Simmonds contended she would not have had standing to join Singh's lawsuit. (*Id.*). Although Simmonds acknowledged that she was aware the transfer may affect the foreclosure sale, she testified that such outcome was an unintended consequence. (*See id.* at 160). Finally, Simmonds attested that "[e]ven if the foreclosure sale was stopped, it would have been temporary" because her bankruptcy case was scheduled to be dismissed on July 31, 2018. (*Id.* at 161).

On August 29, 2018, Younge appeared on behalf of Simmonds before the bankruptcy court to explain the basis for the transfer of the Property. (*See* OSC Hr'g Tr., ER 90). Simmonds's testimony was consistent with her Declaration statements. (*See generally id.* at 89–99). Simmonds added that Younge had introduced her to Singh, that she was Younge's wife and legal assistant, and that it was Singh's idea to

5.

transfer the Property to her. (*Id.* at 95:4–17). During the hearing, Judge Bauer commented that the transfer was "outrageous" and "beyond the pale" and that she would be referring Younge to the Panel. (*Id.* at 94:22–25). Ultimately, Judge Bauer ordered the U.S. Trustee to draft an order to show cause why Younge should not be referred to the court's Panel and scheduled a follow-up hearing for October 10, 2018. (*See id.* at 98:1–21).

### E. The Bankruptcy Judge's Referral to the Panel.

On December 4, 2018, Judge Bauer entered her Findings of Fact and Conclusions of Law in which she concluded that Younge should be referred to the Panel. (BK Findings, ER 24). On December 12, 2018, Judge Bauer issued a separate Statement of Cause formally referring Younge to the Panel pursuant to the bankruptcy court's Fifth Amended General Order 96-05. (*See* Statement of Cause, ER 3–6).

Judge Bauer made several factual findings for the Panel's review, including that: (1) The sole purpose of the Property transfer was to hinder, delay, and frustrate Bayview's July 23, 2018 foreclosure sale; (2) Younge filed Simmonds's Opposition and Declaration without undertaking a reasonable inquiry into the circumstances and for an improper purpose solely to harass, cause an unnecessary delay, and/or cause a needless increase in the cost of litigation; (3) Younge was credible when he claimed he was unaware that the Property would be transferred; (4) Younge failed to supervise Simmonds by failing to monitor and oversee the surreptitious actions between Singh and Simmonds with respect to the Property transfer; (5) in the Opposition, Younge attempted to relitigate the same arguments that had already been rejected by state and federal courts; and (6) Younge's actions did in fact cause unnecessary delay and/or a needless increase in the cost of litigation to Bayview. (*See* BK Findings, ER 21–23).

Based on these findings, Judge Bauer concluded that Younge violated Federal Rule of Bankruptcy Procedure ("FRBP") 9011 and California Rule of Professional Conduct ("CRPC") 3-110(A). (*Id.* at 24). Judge Bauer recommended that the Panel prohibit Younge from practicing before the Central District's Bankruptcy Court.

(Statement of Cause, ER 4).

### F. The Panel's Sanction.

Upon Judge Bauer's referral under the Fifth Amended General Order 96-05, the clerk of the bankruptcy court randomly selected bankruptcy Judges Barry Russell, Robert N. Kwan, and Mark D. Houle to be part of the Panel. (*See* ER 50). After a round of briefing, the Panel held a hearing on March 25, 2019. (Panel Tr., ER 136).[7] During the hearing, Younge acknowledged that he was on probation with the State Bar for failing to properly supervise Simmonds. (*Id.* at 161:13–162:4).

On June 27, 2019, the Panel issued its memorandum of decision. (*See* BK Mem., ER 102–07). After reviewing Judge Bauer's findings *de novo*, the Panel adopted all of them with one exception.[8] (*Id.* at 105). The Panel found Younge's claim that he was not involved in the Property's transfer not credible and concluded that he "was involved in and otherwise had knowledge of the transfer at the time it was made." (*Id.*). Based on those findings, the Panel unanimously suspended Younge from practicing law before the U.S. Bankruptcy Court for the Central District of California for a minimum of five years. (*Id.* at 105–06). The Panel further ordered that to be reinstated, Younge would need to complete five hours of continuing legal education on legal ethics. (*Id.* at 106). That same day, the Panel entered its formal order imposing Younge's suspension with conditions. (*See* BK Order, ER 125–26). Younge filed this appeal on July 11, 2019. (*See* ER 129).

---

[7] Bankruptcy Judge Neil W. Bason submitted a second statement of cause detailing an additional basis to refer Younge to the Panel. (*See* ER 34). Judge Bason identified a basis for discipline related to Younge's performance in a separate, unrelated bankruptcy case. (*See id.*). Judge Bason alleged that in *In re Morake* (No. 2:17-bk-15043-NB), Younge submitted incomprehensible, implausible, and unreliable schedules, despite multiple opportunities to cure their deficiencies. (*See* ER 35). The Panel ultimately determined that the record concerning Judge Bason's allegations was too factually undeveloped to serve as a basis for discipline. (BK Mem., ER 106). That finding is not before the Court on appeal.

[8] Accordingly, in discussing the Panel's findings, the Court will also cite the findings from Judge Bauer that the Panel adopted.

### III. LEGAL STANDARD

A district court may hear appeals from "final judgments, orders, and decrees" of bankruptcy judges. 28 U.S.C. § 158(a). A bankruptcy court's decision whether to discipline an attorney is reviewed for abuse of discretion. *See In re DeVille*, 361 F.3d 539, 547 (9th Cir. 2004) (citation omitted). Courts apply a two-part test to determine if the bankruptcy court abused its discretion: First, the Court determines *de novo* whether the bankruptcy court identified the correct legal rule to apply for the relief requested. *See id.* (citation omitted). Second, the Court examines the bankruptcy court's factual findings for clear error. *See id.* (citation omitted).

The bankruptcy court's factual findings are affirmed unless the Court determines that those findings are "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *In re Nguyen*, 447 B.R. 268, 276 (B.A.P. 9th Cir. 2011) (internal quotation marks omitted). The Court must accept the bankruptcy court's findings of fact unless, "upon review, the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). If there are multiple possible views of the evidence, the bankruptcy judge's choice between them cannot be clearly erroneous. *See In re Marshall*, 721 F.3d 1032, 1039 (9th Cir. 2013) (citation omitted).

### IV. DISCUSSION

Younge seeks the Court's review of five of the Panel's findings of fact and conclusions of law, including that: (1) He violated FRBP 9011; (2) he violated his obligation to develop appropriate office procedures and to supervise law staff; (3) he violated CRPC 3-110(A); (4) he was aware of the transfer of the Property prior to its execution and participated in the transfer; and (5) the proper discipline for his misconduct is a five-year suspension. (AA Br. 2).

To avoid duplicative analysis, the Court will first address Younge's argument that he did not violate FRBP 9011, followed by his argument that he did not violate

8.

CRPC 3-110(A), and ending with an analysis of his five-year suspension. The Court's consideration of the second and fourth issues will overlap with its discussion of FRBP 9011 and CRPC 3-110(A).

### A. The Panel Did Not Abuse Its Discretion in Concluding That Younge Violated FRBP 9011.

The Panel concluded that Younge violated FRBP 9011 by filing the Opposition and Simmonds's Declaration in response to Bayview's motion for relief from the automatic stay. (BK Findings, ER 22–23). Specifically, the Panel found that Younge filed both papers without a reasonable inquiry, for an improper purpose, and without a legal basis. (*See id.*).

To begin, Younge does not dispute the Panel's application of FRBP 9011(b) to his conduct. (*See* AA Br. 9). Thus, the only issue before the Court on appeal is whether the Panel clearly erred in applying FRBP 9011(b) to the facts.

FRBP 9011(b) provides that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

In analyzing the reasonableness of an attorney's inquiry, courts apply an objective standard and compare the conduct in question against that of a "competent attorney

admitted to practice before the involved court." *Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1441 (9th Cir. 1991).

Younge argues that the Panel clearly erred in finding that he violated FRBP 9011. First, he contends that, as Judge Bauer originally found, he was not involved in the transfer of the Property. (AA Br. 9–10). Second, he claims that he "made an inquiry into the transfer to determine the effect on future litigation," as required by the Rule. (*Id.* at 10). He believed the transfer was reasonable and legal given that Singh was severely sick and needed someone to continue litigating on his behalf. (*Id.* at 10–11). Third, Younge argues that his filing of the Opposition and Declaration did not cause a delay or needlessly increase the cost of the litigation. (*Id.* at 11).

The U.S. Trustee responds that the Panel's findings were correct because Younge's filings reasserted arguments that had already been rejected by other courts. (AE Br. 39–40). The U.S. Trustee also notes that Younge conceded at the disciplinary hearing that he should not have filed the Opposition. (*Id.* at 40).

Younge's arguments regarding the Panel's FRBP 9011 findings are misplaced. As a preliminary matter, FRBP 9011 applies to petitions, pleadings, written motions, or other papers, which is why the Panel based its findings on Younge's filing of the Opposition and Declaration, rather than the fact of the transfer itself. (*See* BK Findings, ER 22–23). Specifically, the Panel adopted Judge Bauer's finding that those papers made the same arguments already rejected by the state court—in denying Singh's applications for TRO—and federal court—in dismissing Singh's adversary proceeding. (*See id.* at 22). Younge's argument that he considered the effect of the transfer on *future* litigation is unavailing, because he fails to dispute the Panel's finding that he failed to make a reasonable inquiry into the propriety of relitigating the same arguments he raised in *past* pleadings before the state and federal courts. Thus, even if the Court agreed with Younge's arguments regarding his knowledge of the transfer, this undisputed finding serves as an independent basis for a violation of FRBP 9011.

10.

In addition, the Panel did not commit clear error to the extent it based its FRBP 9011 findings on Younge's knowledge of the transfer before it occurred. First, although Younge repeatedly points to Judge Bauer's finding that he was not aware of the transfer at the time it took place, (AA Br. 9–10, 17), the Court's role on appeal is to review the Panel's findings rather than Judge Bauer's. (*See generally* Notice of Appeal and Statement of Election, Dkt. No. 1 (appealing the Panel's order dated June 27, 2019); BK Mem., ER 105 (noting that the Panel reviewed the matter *de novo*)). Second, Younge is incorrect that the Panel failed to identify the basis for its finding that he was aware of and involved in the transfer. (*See* AA Br. 17). On the contrary, in its order, the Panel explained that it reached this conclusion based on:

> [The Court's] extensive questioning . . . regarding, among other things, the circumstances of the transfer, the practices of Mr. Younge's office, Ms. Simmonds'[s] training, a past office incident in 2017 involving an improper action taken by Ms. Simmonds, and the relationships between Mr. Singh, Mr. Younge, and Ms. Simmonds prior to and at the time of the transfer.

(BK Mem., ER 105).

Third, the Panel's finding that Younge knew of and was involved in the transfer was not illogical, implausible, or without support in the record. It was not illogical, for instance, for the Panel to question why Singh would go behind Younge's back to execute the transfer with Simmonds, even though Younge was his attorney on the bankruptcy case. (*See* Panel Tr., ER 181:3–11). Younge's version of events is even more incredible because Singh had been seeking Younge's legal advice since 1994, whereas he had only known Simmonds, a legal assistant, since 2016 and had no apparent connection to her. (*See id.* at 171:20–173:18, 176:19–177:9). Further, even if Singh did not tell Younge about the transfer, it was equally if not more unlikely that Simmonds would hide it from Younge, her husband and attorney, given that she had an ongoing bankruptcy case and had also caused him to have a "very close call" with

the State Bar just the year before. (*See id.* at 176:3–10). When confronted by the Panel about these inconsistencies, Younge's responses were less than forthcoming. (*See id.* at 179:13–180:11 (offering "I did not participate in this transfer" in response to inconsistencies raised by the Panel); *id.* at 180:12–181:11 (responding "[t]hat's my testimony" after the Panel explained its incredulity)).

Although the transfer itself cannot serve as a basis for sanctions under FRBP 9011(b), the Panel did not err in finding that Younge's involvement in it made his filings all the more problematic. In other words, although Younge conceded that the transfer was improper because it frustrated the foreclosure sale, (*id.* at 215:22–217:3), he failed to cooperate with Bayview to allow the foreclosure sale to go forward without additional litigation costs; instead, he assisted Simmonds with opposing Bayview's motion for relief. Younge contends that he was simply doing his job as Simmonds's attorney in filing the Opposition and Declaration. (AA Br. 12). But he ignores that he also has a duty as an officer of the court to ensure that his papers are supported by the law and facts. *See In re Jones*, 41 B.R. 263, 267 (Bankr. C.D. Cal. 1984) ("As an officer of the Court, attorneys owe an ethical duty to the judicial system not to abuse it."). Without such ethical boundaries, attorneys would be free to file frivolous papers to satisfy even the most problematic of their clients' whims. Accordingly, the Court concludes that the Panel did not commit clear error in finding that, because of his involvement in the transfer, Younge filed the Opposition and Declaration for an improper purpose and without a legal basis.

Finally, the Panel did not clearly err in finding that Younge's filings caused unnecessary delay and needlessly increased the cost of the litigation. (*See* BK Findings, ER 22–23). As previously discussed, Younge offers no persuasive reason why it was appropriate to drag Bayview through yet another round of briefing in order to foreclose on the Property. Instead, Younge argues that there was no delay at all because Bayview's motion for relief from stay was already set for hearing when he filed the papers. (AA Br. 11). But Younge ignores that there are faster and less

expensive ways to resolve a motion short of hearing and decision. For instance, Younge could have negotiated directly with Bayview to undo the problematic transfer and schedule the foreclosure sale with as little further delay and expense as possible.

For these reasons, the Court affirms the Panel's findings that Younge violated FRBP 9011 by filing the Opposition and Simmonds's Declaration.

### B. The Panel Abused Its Discretion in Concluding That Younge Violated CRPC 3-110 By Failing to Supervise Simmonds.

The Panel concluded that Younge violated CRPC 3-110 by failing to develop appropriate office procedures and supervise Simmonds, his legal assistant. (*See* BK Findings, ER 24). In addition, the Panel found that based on his disciplinary record, Younge demonstrated a pattern and practice of failing to properly supervise law office staff. (*Id.*).

#### 1. The Panel Identified the Correct Legal Rule.

Younge argues that the Panel did not have the authority to apply CRPC 3-110 because only the State Bar can enforce its professional rules. (*See* AA Br. 16). In addition, Younge contends that only a client can bring charges against him for failing to act competently. (*Id.*). The U.S. Trustee responds that the bankruptcy court has adopted California's professional rules as the standards for its attorney members. (*See* AE Br. 33–34).

Central District Local Bankruptcy Rule 2090-2(a) provides that "[a]n attorney who appears for any purpose in this court is subject to the standards of professional conduct set forth in Local Civil Rule 83-3." Central District Local Civil Rule 83-3.1.2 adopts the California's professional rules, including "the decisions of any court applicable thereto," as the standards of professional conduct for attorneys practicing in the Central District. "[A]ny breach or violation thereof may be the basis for the imposition of discipline." C.D. Cal. Loc. Civ. R. 83-3.1.2.

At the time of the events in question, CRPC 3-110(A) provided that "[a] member shall not intentionally, recklessly, or repeatedly fail to perform legal services

with competence."[9]  This rule encompasses an attorney's duty to supervise the work of subordinate attorneys and non-attorney employees or agents.  Cal. R. Pro. Conduct 3-110, Discussion (citing multiple California Supreme Court decisions).  For example, in *Trousil v. State Bar of California*, the California Supreme Court found that the petitioning attorney had willfully breached his fiduciary duty where his secretary had failed to promptly mail the client's settlement check.  38 Cal. 3d 337, 342 (1985).  The court concluded that even if there was no deliberate wrongdoing, "where fiduciary violations occur as a result of lapses in office procedure, they may be deemed 'wil[l]ful' for disciplinary purposes."  *Id.* (citation omitted).

Because the Panel formulated the issue in question as whether Younge failed to supervise his law staff, it correctly identified CRPC 3-110 as the legal rule to apply. Contrary to Younge's arguments that the Panel did not have the authority to apply CRPC 3-110, the local rules of the bankruptcy and district courts clearly provide that a violation of any of the California professional rules serves as a basis for discipline in this district.  *See* C.D. Cal. Bankr. Loc. R. 2090-2(a); C.D. Cal. Loc. Civ. R. 83-3.1.2. Further, Younge cites no authority for his contention that only a client can assert a violation of the California professional rules.  Indeed, the relevant local rules give bankruptcy judges the discretion to initiate disciplinary proceedings without a third party complaint.  *See* C.D. Cal. Bankr. Loc. R. 2090-2(b) (providing that bankruptcy judges may refer attorneys to the court's disciplinary panel if they have "cause to believe" that they have engaged in unprofessional conduct); C.D. Cal. Loc. Civ. R. 83-3.1 (allowing judges to initiate disciplinary proceedings).

---

[9] Younge's alleged misconduct occurred prior to the State Bar's amendments to its rules in November of 2018.  *See generally* Cal. R. Pro. Conduct (amended 2018).  The Court will analyze his conduct pursuant to the Rules in place at the time of the events in question.  Accordingly, unless otherwise noted, the Court's citations are to the 1992 version of the rules, which was in effect until 2018.  *See generally* Cal. R. Pro. Conduct (amended 1992).

14.

**2. The Panel's Application of CRPC 3-110 Was Clearly Erroneous.**

Younge argues that he did not violate FRBP 9011 because he did not authorize or direct the transfer of the Property. (AA Br. 16). In support of his position, he raises the same arguments concerning his knowledge of the transfer that the Court already rejected in the previous section. (*Id.* at 17). He adds that the Panel's finding that he was aware of and participated in the transfer is inconsistent with the finding that he failed to supervise Simmonds. (*Id.*).

The U.S. Trustee counters that Younge can be sanctioned for Simmonds's actions whether or not he was aware of the Property's transfer. (*See* AE Br. 35, 37). The U.S. Trustee also argues that even if Younge knew of the transfer, he can be sanctioned under CRPC 3-110 because "[h]is awareness of the transfer simply made the failure to supervise more egregious." (*Id.* at 36 n.11).

The Court agrees with Younge's argument regarding the consistency of the Panel's findings. The Panel's finding that Younge was involved in the transfer conflicts with its finding that he failed to properly supervise Simmonds by not monitoring her "surreptitious" arrangement with Singh. (*Compare* BK Mem., ER 105 *with* BK Findings, ER 24). If Younge was involved in the transfer, then the Court sees no basis to charge him with failing to supervise an employee who was on the same page as him. In other words, Younge is directly responsible for the misconduct, rather than vicariously through Simmonds. If the Panel wishes to sanction that direct misconduct, it must find another basis to do so.

The outcome might be different if the Panel had only found that Younge was aware of, but not involved in, the transfer. In that case, it would not be implausible to conclude that Younge, being aware of the impending transfer, violated his duty to supervise Simmonds by failing to prevent it. *See Vaughn v. State Bar of Cal.*, 6 Cal. 3d 847, 857–59 (1972) (affirming discipline for attorney who failed to prevent unethical acts by his staff).

Therefore, the Court concludes that the Panel abused its discretion in finding

15.

that Younge violated CRPC 3-110 given the Panel's factual findings.

### C. The Panel Did Not Abuse Its Discretion In Determining Younge's Sanction.

Younge argues that the Panel's decision to suspend him for five years is excessive because its findings of fact are erroneous. (AA Br. 18). He acknowledges, however, that the sanction would be appropriate if he had participated in the transfer. (*Id.*).

In response, the U.S. Trustee argues that Younge essentially conceded that the sanction is appropriate given that the Panel found he was involved in transferring the Property. (AE Br. 41). In addition, the U.S. Trustee contends that the sanction is reasonable based on Younge's misconduct and his past disciplinary history. (*Id.*). Namely, Younge was on probation with the State Bar at the time of the Property's transfer and his filing of the Opposition and Declaration. (*Id.* at 42). The U.S. Trustee argues that the discipline imposed is closely tailored to protect litigants before the bankruptcy court only, so Younge is still free to practice in other state and federal courts. (*Id.*).

Younge does not dispute the Panel's authority to suspend him from practicing before the bankruptcy court or the fairness of the Panel's proceedings. *See In re Brooks-Hamilton*, 400 B.R. 238, 250–52 (B.A.P. 9th Cir. 2009), *modified on other grounds by In re Nguyen*, 447 B.R. 268 (B.A.P. 9th Cir. 2011) (discussing the appellant's arguments concerning due process and the court's authority to sanction). Most importantly, Younge waives his reasonableness argument in the event the Court affirms the Panel's finding that he was aware of and involved in the transfer. Because the Court affirms that finding, there are no other legal or factual issues related to the propriety of his sanction for the Court to review on appeal.

On the other hand, the Panel may impose additional sanctions on Younge upon reconsideration of its CRPC 3-110(A) findings on remand. If so, the Panel must identify the authority for those additional sanctions.

Accordingly, the Court affirms the Panel's imposition of a five-year suspension for Younge's misconduct.

## V. CONCLUSION

"As reprehensible as is the conduct of a debtor who abuses the process, the assisting in this course of action by an attorney, represents a far more serious problem, because an attorney is involved in many cases other than merely the debtor's." *In re Jones*, 41 B.R. at 267. Regardless of what legal rules apply to Younge's conduct, it was clearly unethical and unacceptable, especially for an experienced attorney like him. Younge has only himself to blame for the predicament he now faces; not Simmonds, Singh, Bayview, or the bankruptcy court.

For the foregoing reasons, the Court **AFFIRMS in part and REVERSES in part** the Panel's order and accompanying memorandum of decision. Younge's five-year suspension from practice in the Central District's Bankruptcy Court stands. The case is **REMANDED** to the Panel to reconsider whether Younge committed additional ethical violations by his direct involvement in the transfer of the Property.

Dated: September 15, 2020  _____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

CC: BK Court

17.